Ronald S. HILL

v.

**BETHLEHEM STEEL CORPORATION, et al.**

Walter S. HUCALUK

v.

**BETHLEHEM STEEL CORPORATION, et al.**

**Civ. A. Nos. 87–7763, 87–7764.**

United States District Court, E.D. Pennsylvania.

Oct. 25, 1989.

William J. Fries, Allentown, Pa., for plaintiffs.

Dona S. Kahn, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs, Ronald S. Hill and Walter S. Hucaluk, filed a Motion for Reconsideration[1] and a Motion for Relief from Judgment from my Memorandum and Order dated June 2, 1989 granting defendants' motions for summary judgment. For the reasons set forth below, I shall deny both motions.

### I.

Plaintiffs contend that the recent Supreme Court decision in *Price Waterhouse v. Hopkins*, — U.S. —, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), substantially alters the employer's burden of proof in an employment discrimination case.[2] In light of *Price Waterhouse*, plaintiffs contend that it is no longer sufficient for an employer to rebut a prima facie case of age discrimination by merely articulating a non-discriminatory reason for discharge. In essence, plaintiffs argue that I erred in applying the burden-shifting method of proving discrimination that was established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The decision in *Price Waterhouse* applies to cases in which it has been shown that an employment decision resulted from a mixture of legitimate and illegitimate motives. 109 S.Ct. at 1781. In other words, *Price Waterhouse* only applies to "mixed motive" cases. A mixed motive is one in which the challenged employment action is the result of both legitimate business reasons and admittedly prohibited discriminatory considerations.

Pursuant to *Price Waterhouse*, if a plaintiff proves through direct evidence that an employment decision was motivated in part by an illegitimate reason, then the employer/defendant may "avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the ... [illegitimate reason] into account." *Id.* at 1795. In a mixed motive case, the burden of persuasion shifts to the employer/defendant to prove that it would have made the same decision in the absence of discrimination. *Id.* at 1788.

Because such direct evidence of discrimination is often difficult to obtain, the Supreme Court established in *McDonnell*

1. Plaintiffs' Motion for Reconsideration is actually entitled "Motion for Reconsideration and/or Reargument and/or Motion to Alter or Amend Judgment Pursuant to F.R.C.P. 59(e) and/or Motion to Amend Findings and/or to Make Additional Findings Pursuant to F.R.C.P. 52(b)." Plaintiffs are in error in bringing this motion pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure. These rules apply to judgments entered after a trial and do not apply to judgments entered pursuant to a motion for summary judgment, as in the present case. Therefore, I will consider this a Motion for Reconsideration pursuant to Rule 20(g) of the Local Rules of the Eastern District of Pennsylvania.

2. Whereas the plaintiff in *Price Waterhouse* alleged sex discrimination pursuant to Title VII, the plaintiffs in the present case allege age discrimination pursuant to the Age Discrimination in Employment Act (ADEA). Nonetheless, the burdens of production and proof established for Title VII cases are applied to ADEA cases because of the similarity between the two statutes. *See, e.g., Massarsky v. General Motors Corp.,* 706 F.2d 111, 117–18 (3d Cir.1983) (applying *McDonnell Douglas Corp. v. Green* to a claim under the ADEA); *Smithers v. Bailar,* 629 F.2d 892, 894–95 (3d Cir.1980) (applying *McDonnell Douglas Corp. v. Green* to a claim under the ADEA).

*Douglas* a method of proving discrimination through the use of circumstantial evidence. In *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Court stated that the "shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court *despite the unavailability of direct evidence.'*" *Id.* at 121, 105 S.Ct. at 622 (emphasis added).

Under the method of proof set forth in *McDonnell Douglas,* and refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. 450 U.S. at 252–54, 101 S.Ct. at 1093–94. Once the plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the defendant to articulate a legitimate non-discriminatory reason for the employer's conduct. *Id.* at 253, 254–56, 101 S.Ct. at 1093, 1094–95. Once the defendant has rebutted the plaintiff's prima facie case, the burden of production shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered non-discriminatory reasons are pretextual or unbelievable. *Id.* at 253, 256, 101 S.Ct. at 1093, 1095. Under this method of proof, the burden of persuasion always remains with the plaintiff. *Id.* at 256, 101 S.Ct. at 1095.

In his plurality opinion in *Price Waterhouse,* Justice Brennan specifically stated that "[o]ur holding casts no shadow on *Burdine,* in which we decided that, even after a plaintiff has made out a prima facie case of discrimination under Title VII, *the burden of persuasion* does not shift to the employer to show that its stated legitimate reason for the employment decision was the true reason." *Id.* 109 S.Ct. at 1788 (emphasis added) (citing *Burdine,* 450 U.S. at 256–58, 101 S.Ct. at 1095–96). Consequently, it is clear that *Price Waterhouse* did not overturn *McDonnell Douglas,* upon which I relied in my Memorandum and Order. The only issue that I must decide, therefore, is whether the present case is a mixed motive case to which the decision in *Price Waterhouse* is applicable.

In *Price Waterhouse,* there was direct evidence that the employer's decision not to make plaintiff Hopkins a partner was based upon the legitimate reason that her interpersonal skills were lacking as well as the illegitimate reason that she was a woman. The district court found that there were clear signs that some of the partners reacted negatively to Hopkins' personality because she was a woman. *Id.* 109 S.Ct. at 1782. There was also testimony in the record that, in deciding to deny plaintiff a promotion to partner, credence was given to partners' comments which resulted from sexual stereotyping. *Id.* The *coup de grace,* as the Court called it, was delivered by Thomas Beyer who, while explaining to Hopkins the Policy Board's reason for placing her candidacy for partner on hold, advised her that she should "'walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry.'" *Id.* (citing the district court opinion, *Hopkins v. Price Waterhouse,* 618 F.Supp. 1109, 1117 (D.D.C.1985)). The district court found that gender played a motivating part in the employment decision not to make the plaintiff a partner and that the employment decision was based on a mixture of legitimate and illegitimate reasons.

In the present case, unlike *Price Waterhouse,* there is no direct evidence of discrimination against the plaintiffs based upon their age. Memorandum and Order at 6–7. This is the reason that I applied the *McDonnell Douglas* method of proving discrimination through circumstantial evidence.[3] Memorandum and Order at 7. Therefore, I conclude that the present case is not a mixed motive case because the plaintiffs have failed to prove that their age, an illegitimate reason, played a motivating part in the employment decision to

---

**3.** "[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985).

discharge them. As a consequence, *Price Waterhouse* does not apply to this case.

## II.

■ Next, plaintiffs contend that the statistical proof presented in this case establishes that defendants' proffered legitimate reason for discharging the plaintiffs is pretextual. In making this argument, plaintiffs allege that the Affidavit of George Oplinger (Exhibit E to Defendants' Summary Judgment Motion in *Hill*), upon which I relied in granting the defendants' motions for summary judgment, contains erroneous information. I will, therefore, reconsider my decision in light of this allegation.

In granting the defendants' motions for summary judgment, I found that the defendants had rebutted the plaintiffs prima facie case of discrimination by offering a legitimate non-discriminatory reason for its decision to discharge the plaintiffs. In making this finding, I relied on the testimony of George Oplinger and Larry Trubilla, who were supervisors at the plant in Bethlehem. Oplinger and Trubilla testified that the decision to lay off the plaintiffs in December 1985 was made in furtherance of instructions from their superiors to reduce by fifty percent (50%) the number of employees in the Shape and Rail Products (SRP) Unit of Bethlehem Steel. Oplinger stated that he decided to accomplish this fifty percent (50%) layoff[4] by eliminating incentive plans and laying off those individuals who developed those plans, which included the plaintiffs and twelve other employees. Memorandum and Order at 12. Therefore, employees were laid off at the SRP Unit if their job had been eliminated.[5]

I, then, concluded that the plaintiffs had not presented any evidence to show that their employer's business reason was inconsistent, implausible, or not credible. In support of this conclusion, I stated that

"the uncontroverted evidence in the record concerning layoffs establishes no discriminatory effect on either older employees or those approaching entitlement to Rule of 65 pension benefits." *Id.* Looking to evidence in the Oplinger Affidavit which established that the mean age of those employees retained at the SRP Unit was 43.73 and the mean age of those employees laid off at the SRP Unit was 44.57, I concluded that the slight disparity in ages between the two groups of employees was insufficient to create a factual issue as to whether defendants' reason for discharging plaintiffs was pretextual. *Id.* at 13.

Plaintiffs now inform me that the Oplinger Affidavit contains errors. They allege that four individuals listed under the column "Retained" were not employed at the SRP Unit in December 1985 when the layoffs in question took place. Apparently, the four individuals—Mr. Muschlitz, age 55; Mr. Fisher, age 54; Mr. Springer, age 51; and Mr. Bott, age 50—were actually employed at the Beth Forge Unit. Recomputing the mean age of the retained employees without these four individuals, plaintiffs contend that the correct mean age is 40.5 rather than 43.73.

Plaintiffs also allege that two of the employees under the column "Laid Off" should not be included in that group. Plaintiffs allege that Mr. Dickey, age 38, was actually employed by the Beth Forge Unit and that Ms. Steele, age 26, voluntarily retired. Recomputing the mean age of the laid-off employees without these two individuals, plaintiffs contend that the correct mean age is 46.7 rather than 44.57.

Before discussing the significance that I attach to this newly computed statistical evidence, I should state that, although plaintiffs set forth the basis upon which they make their contention of error, they did not submit any new evidence that

---

**4.** In December 1985, fourteen (14) employees were laid off from the SRP Unit and fifteen (15) employees were retained in the SRP Unit. *See* Oplinger Affidavit.

**5.** There was one exception to this rule—after Don Newman's job was eliminated at the SRP Unit, he was given a job performing time stud-

ies. Given the relatively minor difference in ages between Newman, age 40, and plaintiffs, ages 43 and 46, however, I concluded that the retention of this employee did not discredit the employer's reason for the layoffs. Memorandum and Order at 16.

proves that the Oplinger Affidavit is erroneous. For instance, plaintiffs could have submitted affidavits from the employees in question or exhibits of company records stating the unit to which each employee was assigned in December 1985. Instead, plaintiffs rely upon a contradiction between Oplinger's affidavit and Trubilla's deposition, both of which were part of the record when the summary judgment motions were decided. Oplinger was the supervisor of the SRP Unit and Trubilla was the supervisor of the Beth Forge Unit when the layoffs took place.

Assuming for the purpose of this motion that Trubilla's deposition testimony is correct and Oplinger's affidavit is incorrect, the newly computed statistical evidence does not change my decision that plaintiffs have failed to present evidence which supports an inference that their employer discharged them for nondiscriminatory reasons. Although the disparity in ages between the group of employees retained and the group of employees laid off is now greater, I still find that the disparity is insufficient to create an inference that the defendants' actions were based upon discriminatory reasons. *See Maxfield v. Sinclair Int'l*, 766 F.2d 788, 793 (3d 1985) (evidence of an insignificant age difference between employees can be insufficient to permit an inference of discrimination).

In looking at statistical evidence to decide whether plaintiffs have proven their claim of age discrimination, I must consider the ages of employees who are similarly situated in respect to qualifications and positions.[6] Oplinger testified that he eliminated all positions with the responsibility of developing incentive plans within the Industrial Engineering Department of the SRP Unit. Therefore, unless all of the employees who were retained at the SRP Unit held positions that required qualifications similar to the qualifications possessed by the plaintiffs, a comparison of the medi-

an age of the employees retained with the median age of the employees laid off is too broad and not overly significant. Because there is no proof in the record that all of the retained employees possessed qualifications similar to those of the plaintiffs, I place very little significance on this statistical evidence.

More importantly, however, the crux of the plaintiffs' claim is that the employer retained younger employees by transferring them to the protective cover of the Beth Forge Unit which underwent far fewer layoffs than the SRP Unit. Therefore, the statistical evidence that would be helpful is a comparison of the ages of those employees who were laid off from the SRP Unit with the ages of similarly situated employees who were transferred to the Beth Forge Unit prior to December 1985. Plaintiffs identify the transfers of Jim Dickey, age 38, Bob Yanega, age 39, and Tom Donchez, age 48, to the Beth Forge Unit as indicative of defendants' discriminatory transfer policy. As I stated in my earlier opinion, Donchez was older than either plaintiff at the time of his transfer and, thus, his transfer is not supportive of plaintiffs' theory. In addition, Dickey, age 38, was laid off from the Beth Forge Unit in January 1986, one month after the plaintiffs, ages 43 and 46, were laid off from the SRP Unit. Trubilla Deposition at 77–78.

Furthermore, as I stated in my earlier opinion, I am not convinced that the ADEA requires an employer to disprove the possibility that an employee's layoff during a corporate reorganization could have been averted by the employee's transfer to another department or unit in the corporation. Memorandum and Order at 15. This is especially true when all departments or units are attempting to reduce personnel for economic reasons, as was the case with both the SRP and Beth Forge units. Trubilla Deposition at 77. *See Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir.1986)

**6.** Plaintiffs may meet their initial burden of establishing a prima facie case of discriminatory layoffs by showing (1) that they are members of a protected class, (2) that they were qualified for the positions in question, and (3) that they were discharged while *similarly situated* young-

er individuals were hired or retained. Memorandum and Order at 7–8. *See also Maxfield v. Sinclair Int'l*, 766 F.2d 788, 791–93 (3d Cir.1985); *Massarsky v. General Motors Corp.*, 706 F.2d 111, 117–18 (3d Cir.1983).

("Where an employer reduces its workforce for economic reasons, it incurs no duty to transfer an employee to another position within the company.").

### III.

Finally, plaintiffs contend that the record establishes that there are genuine issues of material fact with respect to both their age discrimination claim and their ERISA claim. All of these arguments merely renew arguments which plaintiffs made in opposition to defendants' motions for summary judgment. Therefore, I will deal with these contentions very briefly.

With respect to their ERISA claim, plaintiffs contend that I ignored the contradictory and inconsistent explanations provided by defendants regarding the reasons for maintaining a roster list of employees in the Industrial Engineering Department. Plaintiffs allege that the purpose of this list is to provide an easy method of determining the pension eligibility of each employee and, thus, which employees to lay off. Plaintiffs also contend that I ignored the fact that supervisors Oplinger and Trubilla participated in the "PMS" program, under which they were entitled to bonuses for achieving cost savings. I did not ignore any of this evidence but concluded that "in the absence of any indication that the list or the PMS program guided the supervisors' layoff decisions, the plaintiffs' allegations do not undermine the defendants' asserted business justification for the layoffs." Memorandum and Order at 20. I further find that the various uses for the roster list given by the supervisors are not contradictory, inconsistent, or implausible. In fact, it is logical that a roster list of employees, such as the one in question, could be used for a variety of purposes and, therefore, not created for one particular purpose.

■ With respect to plaintiff Hill's claim that defendants violated his rights under ERISA by failing to "bridge" for pension purposes the period between the beginning of his initial part-time summer job at Bethlehem Steel and the date of his rehire after his return from military service, plaintiff Hill argues that the affidavit of Michael Dopera, the pension plan administrator, "should be viewed as hearsay in the absence of supporting documentation." Dopera was responsible for making determinations as to pension eligibility, and, thus, his expression of the reasons for those determinations is not hearsay. Furthermore, Rule 56 of the Federal Rules of Civil Procedure specifically allows a party to support a motion for summary judgment with affidavits.

Plaintiff Hill also argues that defendants' explanation with respect to his failure-to-bridge claim must be considered suspect in light of a particular employee, B.F. Dague. According to Oplinger's Affidavit, Dague was pension eligible at the time of his discharge, even though he was only 43 years old. Oplinger Affidavit at 4. In their Memorandum of Law in Opposition to Plaintiffs' Motion for Reconsideration, defendants acknowledge that Oplinger's affidavit is erroneous with respect to B.F. Dague's pension eligibility. Defendants state that B.F. Dague was not entitled to an immediate pension at the time of his layoff but, rather, was only entitled to a deferred, vested pension. Defendants' Memorandum at 7–8.

### IV.

Therefore, the contentions raised by plaintiffs have not persuaded me to change my conclusion that plaintiffs have not met their ultimate burden of establishing an inference that defendants' reason for discharge was motivated by discriminatory reasons.