Wesley W. **GUTKNECHT,** Plaintiff,

v.

**SMITHKLINE BEECHAM CLINICAL LABORATORIES, INC.,** Defendant.

**Civil Action No. 95–6013.**

United States District Court, E.D. Pennsylvania.

Dec. 24, 1996.

Linda Carroll Reisner, Patricia L. Cohen,
David F. Yates, Richard S. McConnell, Jr.,

Thompson Coburn, St. Louis, MO, for Wesley W. Gutknecht.

M. Frances Ryan, Dechert, Price & Rhoads, Philadelphia, PA, Alan B. Epstein, Jablon, Epstein and Wolf, Philadelphia, PA, Alene V. Haskell, Andrew J. Martone, Joseph P. Conran, Husch and Eppenberger, St. Louis, MO, for SmithKline Beecham Clinical Laboratories, Inc.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Wesley W. Gutknecht, a former Vice President of defendant SmithKline Beecham Clinical Laboratories, Inc. ("SmithKline") has brought this action alleging age discrimination, pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and the Missouri Human Rights Act, R.S.Mo. § 213.010 et seq.

Currently before the Court is the motion of defendant for summary judgment (Document No. 22), and responses of the parties thereto. For the following reasons, the motion will be granted.

### I. FACTUAL BACKGROUND [1]

SmithKline performs employee drug testing and other kinds of laboratory testing. Plaintiff was hired at SmithKline in 1986 as the Vice President and General Manager ("VPM") for the Central area. He was 53 years old at the time of hiring. During his tenure heading the Central area, plaintiff received favorable performance evaluations, salary increases, and bonuses.

In March 1990, the then-President of SmithKline, Harry Groome ("Groome"), asked plaintiff to become a member of the Executive Management Team and undertake a new assignment as VPM for the West area, which had been a problematic region financially for SmithKline as well as the entire industry. Despite his initial reluctance given the region's poor financial performance in the past, plaintiff agreed.

In his new position, plaintiff was responsible for the laboratories in Hawaii, Los Angeles, Phoenix, San Diego, San Francisco, and Seattle. He was also responsible for the Clinical Trials nationwide and for the Esoteric Testing Laboratory. In 1991, plaintiff received, overall, a favorable evaluation from Groome. Yet, Groome noted in this evaluation that the sales performance in Los Angeles and Hawaii was "disturbing" and that plaintiff should listen more to his subordinates in order to improve his management style.[2]

Mike Moore ("Moore"), Vice President of Human Resources at SmithKline, met with employees who worked with plaintiff in March 1992. As a result of this meeting, Moore sent a memorandum to plaintiff identifying problems with his management style and suggesting ways in which plaintiff could improve his interactions with his subordinates. In response, plaintiff sent a memorandum to his subordinates thanking them for their participation in the meeting and pledging to make an effort to improve.

In April 1992, the newly appointed President of SmithKline, W. Vickery Stoughton ("Stoughton"), became concerned about the inadequate performance of plaintiff, in particular his failure to meet his own budget in the West area, his inability to provide any reasonable explanation for the failure to meet his own budget, his failure to launch a strategy to improve the region's performance, and his faulty treatment of his subordinates. Defendant states that because of these reasons, he decided to discharge plaintiff and informed plaintiff of the termination on September 2, 1992. Later that day, plaintiff asked Stoughton whether he could be considered for another lower level position rather than discharged. Stoughton refused.

Upon the discharge of plaintiff, he was replaced by 59 year-old Robert Murphy ("Murphy"). When Murphy retired fifteen months later, the position of VPM for the West area was eliminated due to a consolida-

---

**1.** The following facts are based on the evidence of record viewed in the light most favorable to plaintiff as the nonmoving party, as required when considering a motion for summary judgment. See Sempier v. Johnson & Higgins, 45

F.3d 724, 727 (3d Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995).

**2.** Defendant's Mem. at Exhibit B–5.

tion of the four regions. The two VPM positions that remained were eventually occupied by individuals younger than plaintiff.

## II. *LEGAL STANDARD*

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). A disputed factual matter is a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The court must make its determination after considering the facts and all reasonable inferences drawn from them in the light most favorable to the nonmoving party. *Id.* at 255–56, 106 S.Ct. at 2513–14. The nonmoving party must produce evidence to support its position, and may not rest upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982).

## III. *DISCUSSION*

Plaintiff claims that defendant terminated him in violation of the ADEA and the Missouri Human Rights Act. Because the same standards and allocation of burdens of proof govern both claims, the ADEA and state law claim will be discussed together. *See Wentz v. Industrial Automation,* 847 S.W.2d 877, 879 (Mo.App.1992) (citing *Midstate Oil v. Missouri Comm'n on Human Rights,* 679 S.W.2d 842, 845–46 (Mo.1984) (en banc)). Under both the state and federal statutes, a plaintiff can sustain an age discrimination claim by either presenting direct or circumstantial evidence. In the instant case, the age discrimination claim of plaintiff is purportedly grounded in both direct and circumstantial evidence.[3]

### A. Direct Evidence

■ A direct evidence case of age discrimination exists when "the evidence the plaintiff produces is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case [as is necessary in a circumstantial evidence case] to shift the burden of production." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 778 (3d Cir.1994). Statements by decisionmakers that are unrelated to the decisional process in terminating an employee do not satisfy the plaintiff's burden. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1804–05, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring). "What is required is ... direct evidence that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id.*

■ To support his argument that he has adduced direct evidence of age discrimination, plaintiff points to three allegedly discriminatory comments made by Stoughton: (1) "[you're] caught in the L.A. thing;" (2) "[y]ou're old enough," and (3) "[y]ou're probably going to sue the hell out of me, but I'm going to [terminate you] anyway...." I find that these comments by Stoughton do not constitute direct evidence of age discrimination. First, the comment about the "L.A. thing" does not relate to age on its face, and thus shows no age animus. Plaintiff testified that he did not know what the "L.A. thing" meant and he did not ask Stoughton to explain the meaning. Gutknecht Dep. at 132. Second, the comment, "[y]ou're old enough,"

3. In addition, plaintiff complains in his response to the motion for summary judgment about purported delays or refusals to produce witnesses and documents on the part of defendant. Upon review of the record, I find that because plaintiff's motion under Federal Rule of Civil Procedure 56(f) to delay resolution of the within motion was granted and discovery provided by defendant, the disagreements about the timing of the discovery are irrelevant to the disposition of this motion for summary judgment. There would appear to be no further discovery available to plaintiff to resolve this motion, nor is there any suggestion of how any perceived deficiency in the discovery responses of defendant, if this could be cured, would effect the merits of this motion.

while on its face relates to age, when put in its proper context, shows no direct evidence of age discrimination. In his deposition, plaintiff described his meeting with Stoughton, when the latter informed him of his termination, as follows:

> A: I asked that the severance termination letter, if you will, would include retirement benefits, at which point he [Stoughton] said, "Face saving, is that right? You're old enough." And I said, "No, it's got nothing to do with face saving. It's got something to do with health care." At which time he said he didn't really know what his authority was, and that I should talk to Mike Moore [Vice President of Human Resources].

Gutknecht Dep. at 131. I find that the only reasonable inference which could be taken from Stoughton's comment, "[y]ou're old enough," is that the comment referred to the fact that plaintiff was of the age to qualify for early retirement at the company. Any other inference would be pure fancy or total speculation. Mere knowledge of an employee's age does not constitute discriminatory animus. *See Armbruster*, 32 F.3d at 780–82; *EEOC v. MCI Int'l, Inc.*, 829 F.Supp. 1438, 1449 (D.N.J.1993) ("[T]here is nothing per se discriminatory about an employer asking an employee about retirement plans."). Third, the comment, "[y]ou're probably going to sue the hell out of me," does not necessarily refer to age on its face. Taken in the context of the meeting between Stoughton and plaintiff, I find that Stoughton's comment referred to his general anticipation that plaintiff would find some reason to instigate a lawsuit in light of plaintiff's termination, and is not evidence of discriminatory animus. Moreover, Stoughton made all of the above-mentioned comments *after*, and not in the course of his decision to terminate plaintiff. Nor do the comments refer to or invoke the earlier period of time when the decision was made. As such, plaintiff has presented no evidence that Stoughton's allegedly discriminatory comments related in any way to the decisional process of terminating plaintiff. Therefore, I find that Stoughton's comments, standing alone, do not constitute direct evidence and do not create a genuine issue of material fact as to whether age played any role in Stoughton's decisionmaking process.

## B. Circumstantial Evidence

Where there is no direct evidence of age discrimination, a plaintiff may still prevail by presenting circumstantial evidence under the burden shifting analysis of *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under a *McDonnell Douglas* framework, a plaintiff must first present a prima facie case by establishing, by a preponderance of the evidence, that (1) he is over 40 years old, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit an inference of age discrimination. *Lawrence v. National Westminster Bank N.J.*, 98 F.3d 61, 65–66 (3d Cir.1996) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995)). Once the plaintiff satisfies his prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.* at 66 (citing *Sempier*, 45 F.3d at 728). Should the defendant successfully carry its burden, the plaintiff then has the burden of proving, by a preponderance of the evidence, that "'the employer's stated reasons were not its true reasons but were a pretext for discrimination.'" *Id.* (quoting *Sempier*, 45 F.3d at 728). A plaintiff may defeat a motion for summary judgment based on the defendant's proffered nondiscriminatory reason by either showing evidence, directly or circumstantially, that (1) discredits the proffered reasons for termination, or (2) discrimination was more likely than not a motivating or determinative cause of the adverse action. *Id.* (citing *Sempier*, 45 F.3d at 731). The plaintiff cannot simply show that the decision was wrong or mistaken, because the factual dispute at issue is not whether the defendant made a correct decision in terminating plaintiff but whether unlawful discrimination motivated that decision. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994). A plaintiff must be able to show evidence of inconsistencies or implausibilities that support an inference that defendant did not act for its stated reasons.

*Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638 (3d Cir.1993).

Here, the parties dispute all three prongs of the discrimination claim analysis.

### 1. Prima Facie Case

The Court of Appeals has repeatedly articulated that the fourth element of the prima facie test requires that the employee replacing the fired employee be "sufficiently younger." *Lawrence,* 98 F.3d at 66; *Sempier,* 45 F.3d at 728; *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 897 (3d Cir.) (en banc), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 793 (3d Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). Although no uniform rule exists, it is generally accepted that when the difference in age between the fired employee and his or her replacement is fewer than five or six years, the replacement is not considered "sufficiently younger," and thus no prima facie case is made. *See Gray,* 957 F.2d at 1087 (one year difference is not sufficiently younger); *Lazzaro v. Franklin Mint Co.,* 840 F.Supp. 339, 343 (E.D.Pa.1993) ("Clearly, plaintiff was not replaced by a sufficiently younger person in this case given that [replacement] was only one year younger than plaintiff."); *Bernard v. Bethenergy Mines, Inc.,* 837 F.Supp. 714, 716–17 (W.D.Pa.1993) (seven years difference and four years difference is not sufficiently younger), *aff'd,* 31 F.3d 1170 (3d Cir.1994); *Kuchta v. Westinghouse Elec. Corp.,* Civ. No. 89–1332, 1992 WL 510994, at *10 (W.D.Pa. Feb. 11, 1992) (prima facie case fails because replacement was seven months older than fired employee); *Hill v. Bethlehem Steel Corp.,* 729 F.Supp. 1071, 1074 n. 5 (E.D.Pa. 1989) (seven years difference and six years difference was not sufficiently younger), *aff'd,* 902 F.2d 1560 (3d Cir.1990).

■ Defendant contends that plaintiff failed to satisfy the fourth element of the prima facie test because plaintiff was replaced by Robert Murphy, who was born on April 19, 1933. Defendant's Reply to Plaintiff's Interrogatories No. 5. Plaintiff was born on September 19, 1933. Complaint ¶ 3. As such, Robert Murphy is five months older than plaintiff. Thus, not only was plaintiff not replaced by a "sufficiently younger" employee, plaintiff was actually replaced by an older employee.

Plaintiff cites no case in the Third Circuit where an employee, who has been replaced by an individual of the same age or older, satisfies the fourth prong in the prima facie test. Instead, plaintiff quotes from a recent decision of the Supreme Court of the United States, *O'Connor v. Consolidated Coin Caterers Corp.,* that "[t]he fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he lost out *because of his age.*" —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). Although the Court of Appeals for the Third Circuit has yet to apply *O'Connor* in an age discrimination analysis, I do not believe that *O'Connor* will alter in any way the "sufficiently younger" requirement.

*O'Connor* involved a 56 year-old employee who was replaced by a 40 year-old employee. In that case, the Court of Appeals for the Fourth Circuit stated that the fourth element of a prima facie case for age discrimination requires that the fired employee be "replaced by someone of comparable qualifications *outside the protected class,*" i.e., under the age of 40, and thus concluded that the last element of the prima facie test was not satisfied because the replacement was within the protected class. *Id.* at ——, 116 S.Ct. at 1309 (emphasis added). The Supreme Court of the United States reversed and held that replacements need not be outside the protected class for the plaintiff to establish a prima facie case. *Id.* at ——, 116 S.Ct. at 1310. Particularly poignant to the case *sub judice* is the following statement by the Supreme Court:

> [T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.

*Id.* Thus, I conclude that *O'Connor* does not change the "sufficiently younger" require-

ment of the Third Circuit. Absent clear guidance from the Court of Appeals for the Third Circuit, I decline the invitation of plaintiff to stray from the plain meaning of the requirement that the replacement of plaintiff be "sufficiently younger."

Plaintiff next asserts that because defendant had knowledge of Robert Murphy's plan to retire, "[a] jury could reasonably infer that SmithKline moved Murphy into the position as a temporary measure, as part of a plan to cover up age discrimination by denying Gutknecht his prima facie case, knowing that Murphy too would soon be moving on." Plaintiff's Mem. at 12. While I agree that defendant did have knowledge of Murphy's retirement plans and that he was to be head of the West area until a successor could be found,[4] I reject plaintiff's argument that a jury could reasonably infer that defendant replaced plaintiff with Murphy to avoid a discrimination suit, and thus meet the fourth prong of the prima facie test. Although plaintiff makes this argument in his attempt to establish a prima facie case, this argument is only relevant to the plaintiff's claim of pretext. Yet, the argument fails both the

prima facie test and pretext for the following reasons. Plaintiff has cited no cases, and I have found none, from the Third Circuit that support his argument.[5] Moreover, plaintiff has pointed to no evidence or analysis to suggest that the appointment of Murphy was not a prudent business decision given that he had previously directed the West area. Stoughton Dep. at 209.[6] Also, Murphy remained Vice President of the West area for a considerable period of time, one year and three months. I conclude that this considerable period of time under the circumstances would not permit a reasonable jury to infer any suspicion of pretext or that Murphy was hired to replaced plaintiff in order to avoid an age discrimination suit.

I also reject plaintiff's related argument that because Robert Murphy was temporary and eventually replaced by younger employees, plaintiff has satisfied his prima facie case. In support of his contention, plaintiff cites *Sempier* for the proposition that a plaintiff is not limited to considering only the age of his final replacement to establish a

---

4. A bulletin on September 3, 1992 from Stoughton stated:

> With the retirement of Wes Gutknecht, ... I have asked Bob Murphy to assume responsibility for the West area until a successor is named. Bob's recent announcement of his intention to retire sometime next year, and my plans to capitalize on his valuable expertise, make this a logical move. His knowledge of the business and the West area, which at one time was under his direction, will ensure a smooth transition.

Plaintiff's Exhibit P–4; *see also* Stoughton Dep. at 146.

5. There is some authority suggesting that certain circumstances would reasonably support an inference that the employer hired a temporary replacement, who was older, to ward off a potential discrimination suit. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 561 (10th Cir.1996) (citing *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n. 9 (1st Cir.1979); Howard C. Eglit, *Age Discrimination* § 7.18, at 7–102 to 7–103 (2d ed. 1995)).

In *Greene*, the plaintiff was replaced by an older worker. *Id.* at 558. The Court of Appeals did not reach the issue of whether plaintiff established a prima facie case under the *McDonnell Douglas* test but instead analyzed the evidence under the alternative method of establishing an ADEA claim whereby the plaintiff meets " 'his burden directly, by presenting direct or circum-

stantial evidence that age was a determining factor in his discharge.' " *Id.* at 560 (quoting *Lucas v. Dover*, 857 F.2d 1397, 1400 (10th Cir. 1988)). Under this analysis, the Court of Appeals held that the evidentiary record as a whole raised a jury question whether the employer fired plaintiff due to unlawful age discrimination, notwithstanding that fact that plaintiff had been replaced by an older employee. *Id.* at 562.

The holding in *Greene* is inapposite to the instant case because *Greene* did not deal with the prima facie test of the *McDonnell Douglas* analysis. In addition, the evidence in *Greene*, unlike here, showed a pattern of removals based on age and statements suggesting age motivation.

6. Stoughton stated:

> I asked Bob Murphy to take that job for a whole host of reasons, primarily because he was well qualified to do it. At the time I asked him to take it I indicated to him that we may at some point in the future have to recruit a replacement at the time he chose to retire, but in the meantime given the changing nature of the business and the marketplace we wanted to evaluate how many territories, how many regions, how many area vice-presidents we actually needed. I certainly felt in the short run we needed somebody in California. The team was in complete disarray and disharmony.

Stoughton Dep. at 209.

prima facie case. *Sempier*, 45 F.3d at 729. The Court of Appeals in *Sempier* considered the final replacement *and* another younger employee, who undertook a portion of plaintiff's duties, as sufficient for establishing a prima facie case. *Id.* at 729–30. However, I distinguish *Sempier* on the ground that there the younger employee undertook plaintiff's duties *prior* to the termination of plaintiff, unlike the instant case where the duties of plaintiff were undertaken by younger employees over one year later.[7] Further, plaintiff presents no evidence that defendant knew, or had decided, at the time of plaintiff's termination, just when the regional vice presidents would be reduced from four to two, let alone who these ultimate employees would be. In sum, plaintiff's arguments are too tenuous, not supported by the evidentiary record, and thus insufficient to meet his burden to show a genuine issue of material fact.

Plaintiff's final argument that he should have been transferred instead of terminated is also flawed. The case plaintiff relies on, *Jameson v. Arrow Company*, 75 F.3d 1528 (11th Cir.1996), is inapposite here as it involved a significant reduction in force where the plaintiff's position was eliminated entirely.[8]

In light of the foregoing, I find as a matter of law that plaintiff has failed to establish his prima facie case of age discrimination. For purposes of analysis, however, I will assume that plaintiff has established a prima facie case and proceed to the next stage in the *McDonnell Douglas* framework.

### 2. Legitimate, Nondiscriminatory Reasons

By establishing a prima facie case, a plaintiff eliminates the most common nondiscriminatory reasons for the adverse employment action and creates a presumption of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). Once a prima facie case has been established, the defendant must articulate a legitimate, nondiscriminatory reason for the employer's action. The burden upon defendant is minimal. *Fuentes*, 32 F.3d at 763.

■ Defendant has produced documented evidence in support of its explanation that plaintiff was terminated due to: (1) the poor financial performance of the West area, (2) the repeated failure of plaintiff to meet his budget, and (3) the deficient management style of plaintiff and his inability to interact with his subordinates in an effective fashion. Stoughton Dep. at 154; Declaration of Stoughton ¶ 4; Defendant's Reply to Plaintiff's Interrogatories No. 4(d); Defendant's Reply Mem. at Exhibit 9, Letter to EEOC. Plaintiff does not dispute that defendant has satisfied its minimal burden. Therefore, I conclude that defendant has adequately satisfied its relatively light burden of articulating a legitimate, nondiscriminatory reason for its employment decision. The burden now rebounds to plaintiff to show that defendant's proffered reasons are pretextual.

### 3. Analysis of Pretext

To defeat the motion for summary judgment of defendant, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. In evaluating the proffered reasons of defendant for terminating plaintiff, it is not the role of court to determine whether the employer was "wise, shrewd, prudent, or competent." *Id.* at 765. Rather, plaintiff must point the court to "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, ... and hence infer that the employer did not act for the assert-

---

**7.** If plaintiff's argument is taken to its logical extreme, the duties of a terminated employee will always become the responsibility of a younger employee when looking far enough into the future.

**8.** *See also infra* note 13.

ed non-discriminatory reasons." *Id.* (quotations and internal citations omitted).

Plaintiff has neither offered sufficient evidence to logically cast doubt on defendant's proffered reasons for termination of plaintiff, nor offered any evidence from which a jury could infer that discrimination was more likely than not a determinative factor. In charging pretext, plaintiff asserts four arguments.[9]

#### (a) *Transferred to a Graveyard*

■ Plaintiff argues that the decision of defendant to transfer him to the West area, which was "historically a problem," is evidence of pretext. Plaintiff's Mem. at 14. According to plaintiff, defendant "pushed him into this difficult assignment in an effort to cause his failure and ultimate discharge" and a younger employee was not sent instead. *Id.* Plaintiff testified at his deposition that "[i]t certainly had been a graveyard for predecessors, move them out when they're at a particular age and force them to retire or move them out." Gutknecht Dep. at 57.

Plaintiff relies on *Torre v. Casio, Inc.* as a legal basis for this argument. In *Torre*, there was sufficient evidence for a jury to reasonably infer that the transfer was due to discrimination, including the facts that the plaintiff was terminated only one month after he had been transferred to the different position and the decisionmaker who was involved in the transfer and who had ultimately terminated plaintiff favored younger managers. *Torre v. Casio, Inc.,* 42 F.3d 825, 827–28, 834 (3d Cir.1994). Here, the evidence does not support plaintiff's "graveyard" theory. Because plaintiff was terminated over two years after he had been transferred to the West area, the temporal connection between the transfer and the termination fails to create a permissible inference of discrimination. Moreover, unlike in *Torre*, the individual primarily responsible for transferring plaintiff

to the West area was Groome, whereas a different individual, Stoughton, was responsible for terminating plaintiff. In addition, the evidence does not show that defendant intended the West area to continue performing poorly so that transferring plaintiff there could eventually lead to his termination. To the contrary, Groome testified that he had high hopes that plaintiff, in light of his successful experience with the Central area, could bring the same success to the West area.[10] And, finally, plaintiff provides not a scintilla of evidence in support of his deposition testimony that his "predecessors" have been transferred to the West area only to be similarly discharged.

#### (b) *No Warning*

■ In his attempt to establish a pretext through inconsistencies and implausibilities, plaintiff disputes the proffered explanations regarding his unsatisfactory job performance. Specifically, plaintiff points to his outstanding performance reviews throughout his tenure at SmithKline, having received his last bonus a few months before his termination, and having received a recent favorable performance review accompanied by a salary increase. According to plaintiff, he did not receive any warning that he was in peril of losing his job, which further demonstrates a discriminatory animus.

Unfortunately for plaintiff, the cases he cites are herewith distinguished. In *Brewer v. Quaker State Oil Refining Corp.* and *Sempier*, the plaintiffs were discharged for alleged poor performance, yet received no warning that their performance was less than satisfactory. *Brewer*, 72 F.3d 326, 332 (3d Cir.1995); *Sempier*, 45 F.3d at 725. Here, there is ample admissible evidence showing that plaintiff had difficulties in his interactions with his subordinates and that these problems were communicated to plaintiff.

---

9. I will label the four arguments of plaintiff in the same way that plaintiff has done in his memorandum.

10. In his deposition, Groome stated:

... And it was the considered opinion, mine primarily, ... that because of Wes' success in turning around the Central region that he was the best candidate of the five to turn around the West.

And it seemed to me that his skills and the business situation were well matched; and so we very—I very badly and the others very badly wanted Wes to accept that position and do there what he had done in his job in St. Louis.

Groome Dep. at 33.

*See* Kaufman Dep. at 106–7, 112, 183–84; Groome Dep. at 84; Hopkins Dep. at 25–26; Defendant's Mem. at Exhibit No. 7. Mike Moore, Vice President of Human Resources, conducted a meeting of plaintiff's subordinates in late March 1992. The feedback of these subordinates at this meeting confirmed the need for improvement in plaintiff's management style. Defendant's Mem. at Exhibit No. 7. After learning of the results of the meeting, plaintiff sent a memorandum thanking the participants for their feedback and stating his intention to improve in areas identified as problematic. Defendant's Mem. at Exhibit No. 6. In addition, plaintiff testified that he discussed the declining financial performance of the West area at meetings at SmithKline. Gutknecht Dep. at 110–12.

Thus, although plaintiff received no official warning that his employment was threatened due to either his interactions with his subordinates or the financial performance of the West area, it is uncontradicted that plaintiff himself as well as his co-workers and senior management had knowledge of these problems for several months prior to his termination. Lack of an official warning from defendant that plaintiff may be in risk of losing his job does not permit a jury to infer an inconsistency or implausibility of the nature sufficient to defeat the motion for summary judgment.

### (c) *Direct Evidence*

■ For the reasons stated earlier, I reject plaintiff's argument that the comments made by Stoughton constitute direct evidence of age discrimination.[11] Plaintiff discusses *Brewer* in support of his contention that these comments were open to different interpretations, and hence should be considered by a jury. In *Brewer,* the Court of Appeals for the Third Circuit held that the comment in a performance evaluation that "plaintiff is 53 years old, which presents another problem" can be subject to different interpretations that could involve age animus and should be submitted by a jury. *Brewer,* 72 F.3d at 333. Even assuming that the comments made by Stoughton are subject to different interpretations, the comments were made *after* the decision to terminate plaintiff.

In *Brewer,* the comments were made *prior* to and temporally during the time the decision on the termination of plaintiff was being made, and thus could have been related to the decisionmaking process to discharge the employees. Because the comments of Stoughton were made after he had already decided to terminate plaintiff and because the comments did not refer to or invoke the earlier period of time when the decision was made, I conclude that these comments are not direct evidence of discrimination.

### (d) *Post–Hoc Fabrications*

■ As a final attempt to illustrate inconsistencies or implausibilities, plaintiff disputes defendant's explanation that the declining financial performance of the West area was due to his management and that the personality of plaintiff was problematic. I find no reasonable juror could infer inconsistencies or implausibilities between the proffered justifications of defendant and the evidentiary record.

The sales figures clearly demonstrate a decline in the financial performance of the West area. *Compare* 1992 SmithKline Area Operations Results, Defendant's Mem., Exhibit B–1 *with* 1991 SmithKline Area Operations at Plaintiff's Mem., Exhibit P–18; Stoughton Dep. at 59. Plaintiff even testified that although new accounts were being brought into the area, the customer base was declining at a more rapid rate in 1992, thus causing a failure to meet the budget forecasts and a shortfall in profits. Gutknecht Dep. at 110–12; Stoughton Dep. at 77. Plaintiff points to deposition statements in his attempt to discredit the sales figures by proving that he actually improved the performance of the West area. *See* Groome Dep. at 83; Hopkins Dep. at 31; Murphy Dep. at 78. However, these statements were chosen selectively; none of the statements specifically pertain to the financial performance of the West area in 1992. Because defendant proffered reasons for the termination of plaintiff based on the 1992 financial performance of the West area, these selected statements are insufficient to allow a reasonable factfinder to

---

**11.** *See supra* Part III.A.

infer that defendant's reasons for discharging plaintiff are pretextual. I am mindful that the task of the court is not to determine whether the decision to discharge plaintiff was prudent or wise or correct, but whether a reasonable factfinder could infer that the proffered reasons of defendant masks a decision based on discriminatory animus. Thus, even assuming that the declining financial performance of the West area was not due to plaintiff's actions, from such evidence plaintiff has failed to show, and a reasonable factfinder could not infer, that the decision, even if mistaken, was based on invidious discriminatory animus.

Plaintiff also argues that his recommendation, made while he was VPM of the West area, to change staffing in the Los Angeles office, which was at the time rejected, but was implemented after plaintiff was discharged, demonstrates defendant's attempt to hinder plaintiff's ability to meet the company objectives. I find that the evidentiary record is insufficient to lead a reasonable factfinder to infer age discrimination based on the nonimplementation of plaintiff's recommendation.[12]

Plaintiff's further argument that his personality and management style had been tolerated, even valued, by SmithKline for years, does not bolster his effort to refute the defendant's proffered reason for the termination or to show intentional discrimination.

As previously discussed, the evidence pertaining to plaintiff's inadequate management style had increasingly become a concern as the overall performance in the West area declined. I conclude that including the unsatisfactory management style of plaintiff as one basis for his discharge, does not allow an inference of age bias by a reasonable factfinder.

## IV. CONCLUSION

I conclude that the record contains no direct evidence that plaintiff was terminated as the results of age discrimination. Nor has plaintiff established a prima facie case for age discrimination, because upon his termination he was replaced by an older, not a younger, employee. Further, the evidence of the record, viewed in the light most favorable to plaintiff, is insufficient to allow a jury to discredit defendant's proffered explanations for terminating plaintiff or to show that age discrimination was more likely than not a determinative cause of the adverse employment action.[13]

In sum, I conclude that the fact that plaintiff was replaced by an older employee coupled with the paucity of evidence in support of plaintiff's claim of pretext warrants granting the motion for summary judgment in favor of defendant.

An appropriate Order follows.

12. In another attempt to demonstrate that the proffered reasons of defendant are pretextual, plaintiff claims, somewhat disingenuously, that defendant had earlier relied primarily on plaintiff's management style as reasons, and not the financial problems in the West area, and thus this inconsistency is probative of discrimination. Again, I disagree. The evidence is clear that defendant has consistently stated that his reasons for discharging plaintiff were based on plaintiff's management style *and* the financial problems in the West area. The evidence does not show that defendant emphasized one reason over the other. *See* Stoughton Dep. at 154; Declaration of Stoughton ¶ 4; Defendant's Reply to Plaintiff's Interrogatories No. 4(d); Defendant's Reply Mem. at Exhibit 9, Letter to EEOC ("Gutknecht's repeated refusal to treat subordinates as valuable, and knowledgeable human beings and the disastrous financial performance of the Western Region were the reasons that [Gutknecht]'s employment was terminated.").

13. In his Complaint and affidavit, plaintiff alleges that his request to transfer to another position

in lieu of his termination was denied while "similarly situated younger employees" were transferred. Complaint ¶ 13; Affidavit of Gutknecht ¶ 7. However, plaintiff does not address this issue in his memorandum.

In job elimination cases, plaintiff must show that similarly situated younger employees were treated more favorably. *Hill v. Bethlehem Steel Corp.*, 729 F.Supp. 1071, 1075 n. 6 (E.D.Pa. 1989), *aff'd*, 902 F.2d 1560 (3d Cir.1990). In the instant case, the evidence does not show that similarly situated younger employees were treated more favorably. Plaintiff identifies Edward Kaufman, Larry Morris, and Gary Warwick as younger employees who were transferred. Gutknecht Dep. at 139–47; Affidavit of Plaintiff ¶ 7. Plaintiff has produced no evidence that these three individuals were similarly situated in terms of their seniority, performance evaluations, and that they were transferred in lieu of being discharged. Thus, I find that this contention lacks merit.

678

## ORDER

**AND NOW,** this 23rd day of December, 1996, upon consideration of the motion of defendant SmithKline Beecham Clinical Laboratories, Inc. ("SmithKline") for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Document No. 22), and the response of plaintiff Wesley W. Gutknecht thereto, and the reply of defendant Smith-Kline, and upon consideration of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, and for the reasons set forth in the foregoing memorandum, it is hereby **OR-DERED** that the motion of defendant Smith-Kline is **GRANTED** and summary judgment is hereby entered in favor of defendant SmithKline Beecham Clinical Laboratories, Inc. and against plaintiff Wesley W. Gutknecht. This is a final order.