Lawrence M. ROCCO, Plaintiff,

v.

AMERICAN LONGWALL CORPO-RATION and Meco International, Defendants.

Civil Action No. 95–15.

United States District Court,
W.D. Pennsylvania.

May 20, 1997.

Bruce Bagin, Carolyn M. Corry, Wienand & Bagin Pittsburgh, PA, for Plaintiff.

Susan Brahm Gunn, Jackson, Lewis, Schnitzler & Krupman, Pittsburgh, PA, for Defendants.

## OPINION

DIAMOND, District Judge.

Lawrence M. Rocco ("plaintiff") commenced this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, seeking damages he allegedly sustained as a result of defendants' discrimination against him on the basis of his national origin, American, and his age. The parties filed cross-motions for summary judgment.

In accordance with the Magistrates Act, 28 U.S.C. § 636, this case was assigned to Magistrate Judge Kenneth J. Benson who issued a report on April 1, 1997, recommending that defendants' motion for summary judgment be granted and that plaintiff's cross-motion for summary judgment be denied. Plaintiff's filed timely objections. After a *de novo* review of the record, this court finds that there are genuine issues of material fact and accordingly, will deny the cross-motions for summary judgment.

## Background

Meco International, Ltd. ("Meco Limited"), is a British owned corporation which has world-wide operations. The core business of Meco Limited is to manufacture and sell equipment used in the longwall method of coal mining.[1] Meco Limited is one of the world's largest manufacturers of longwall mining equipment.

The United States subsidiary of Meco Limited is called Meco International, Inc. ("Meco International").[2] Meco International has four entities in the United States. There are three facilities in Warrendale, Pennsylvania; one which is a longwall rebuild facility, another which is a roof support facility and the third, Meco Belts, manufactures belt structure. (Richardson Deposition pp. 12, 476). The fourth facility is located in Abingdon, Virginia.

Meco-Owens Manufacturing, Inc. ("Meco–Owens") is a wholly owned United States subsidiary of Meco International. Meco–Owens manufactured and sold equipment used mainly in conventional mining, but also manufactured and sold equipment used in the longwall mining process. Meco–Owens had locations in Bristol, Virginia, North Carolina and Alabama. The Bristol, Virginia, facility housed both Meco–Owens and Meco International's armored face conveyor strategic business unit/division. All of these entities are in the business of manufacturing, selling, repairing and overhauling mining equipment.

Plaintiff began employment in 1986 with Meco–Owens in the Bristol, Virginia, division as a district sales manager for the northern district of the United States.[3] However, to facilitate his job, plaintiff worked out of his home in Canonsburg, Pennsylvania. At the time plaintiff was hired Meco–Owens manufactured bulk feeders, starters (electrical components for drive systems), take-ups, tail pieces, belt structure and feeder-breakers.[4] Feeder breakers were a substantial product line of Meco–Owens at the Bristol facility. Plaintiff sold all of the products manufactured by Meco–Owens and at times sold longwall mining equipment, replacement rollers and other equipment manufactured by Meco International at the Warrendale facility.

The sales structure of Meco–Owens and Meco International is somewhat convoluted and unclear from the record. What is clear is that Meco International and Meco–Owens had several district sales representatives, managers and manufacturer's representatives. Meco–Owens had one national sales

---

1. Longwall coal mining is a continuous mining process which involves substantial capital equipment to shear coal from a mine face and to transport it over substantial distances by the use of a conveyor belt. A longwall unit is comprised mainly of a shearer, armored face conveyor, roof supports, sorters, and a conveyor belt system.

2. In 1993, Meco International, Ltd. merged with another British company and became Longwall International. At the same time, Meco International, Inc. became American Longwall, Inc.

3. At the time plaintiff was hired, Meco–Owens was known as Dowty–Owens. In 1989, Dowty's

mining operations were purchased by Meco International, Ltd. Accordingly, Dowty–Owens became Meco–Owens Manufacturing, Inc.

There were two other district managers at the time plaintiff was hired, Charles Clark ("Clark") who handled southern West Virginia, Virginia and eastern Kentucky and James Miller ("Miller"), whose sales territory included Illinois and Indiana.

4. Feeder breakers are apparatuses which convey coal on a belt and contain a wheel which crushes unwanted rock in the coal.

manager, Steve Crewdson ("Crewdson"), to whom the district sales managers reported.[5] Both Meco International and Meco–Owens had separate presidents.[6] Although sales personnel received salary from one company only, the sales managers at some point in their careers, sold products manufactured by both Meco International and Meco–Owens and could easily interact with salespersons from the different subsidiaries in various locations. Plaintiff claims that the defendants distinguished the employees by locations rather than companies. Plaintiff stated that "people from Owens work[ed] in Warrendale and vice-versa ... [I]t was hard to identify just exactly who employed them and where they received their paycheck from." (Rocco Deposition p. 86). This also is illustrated by the following examples.

Meco International had sales personnel who sold longwall equipment and personnel who mainly sold belt structures. For example, district sales managers Charles Kaczmarek ("Kaczmarek"), Paul Spedding ("Spedding"), and John Taylor ("Taylor") sold belt structure for the Meco Belts facility in Warrendale.[7] Meco–Owens salespersons, such as the plaintiff, sold conventional mining equipment. But, when Kaczmarek or Spedding had a feeder-breaker customer, they would call plaintiff for assistance. (Rocco Deposition p. 97). Particularly, Kaczmarek and plaintiff often completed sales that the other initiated. (Curtis Deposition p. 85). Generally, if a sales person picked up a lead for a product in which he did not specialize, he would refer that lead to someone within the Meco system. Keith Richardson, President of Meco International, referred to this process as "cross-fertilization." (Richardson Deposition p. 476).

Another example of the porous nature of company barriers is that Crewdson, the sales manager at Meco–Owens, ultimately was promoted to the position of longwall sales manager for Meco International. When Crewd-son commenced his newly elevated position, Ken Savidge, a Meco International employee, moved upward into Crewdson's former position at Meco–Owens.

In the late 1980s and early 1990s, Meco International, Inc. experienced business difficulties. During this time salesmen, including plaintiff, Miller, Clark, Spedding, and Kaczmarek were selling both Meco and Meco–Owens products.[8] In October, 1992, the Meco–Owens division which manufactured the feeder-breaker product was sold to Lakeshore Mining, Inc. The tail-piece division and the armored face conveyor business in Bristol eventually became part of Meco International. Meco International's belt structure division and what was left of Meco–Owens following the sale merged to form a material handling division. Accordingly, plaintiff began selling Meco International belt structure.

In June 1992, the material handling division was disbanded and plaintiff was told that he no longer was to sell belt structure but only products manufactured by Meco–Owens. (Rocco Deposition p. 66). Accordingly, plaintiff, Clark and Miller went back to selling Owens' products exclusively and Spedding, Kaczmarek and Taylor were limited to selling belt structure. (Rocco Deposition p. 66). Shortly thereafter, Rocco was laid off.

Plaintiff filed this lawsuit claiming that younger and/or British employees who performed similar duties were treated more favorably than he was by being provided with an opportunity to transfer to other locations within the Meco conglomerate rather than being laid off. Specifically, plaintiff claims that sales personnel with similar and/or less qualifications and poor performance records were retained because they were younger and/or British.

### Applicable Law

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all

---

**5.** Crewdson was replaced in 1991 by Ken Savidge.

**6.** The President of Meco–Owens, Sam Montgomery's title was changed from president to general manager in 1992.

**7.** These employees were paid by Meco International.

**8.** The sales force is not limited to these persons but plaintiff relies on them for consistent illustrations.

inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial,*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting* Fed. R.Civ.P. 56(a), (e)) (emphasis in *Matsushita* ). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Burdens of Proof for Discrimination

In a discrimination case, the court must determine whether there is sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated. *Weldon v. Kraft, Inc.,* 896 F.2d 793, 797 (3d Cir.1990). A discrimination claim must be evaluated using the shifting burdens of proof initially established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Billet v. CIGNA Corp.,*

940 F.2d 812, 816 (3d Cir.1991). Under the *McDonnell Douglas* framework, the parties' respective evidentiary burdens can be summarized as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citation omitted)

The plaintiff may prove a prima facie case of discrimination either through the use of direct or circumstantial evidence. *Billet,* 940 F.2d at 816. In the absence of direct evidence that age/national origin was a factor in the contested employment action, the plaintiff can establish a prima facie case "by proving by a preponderance of the evidence that he (1) belongs to a protected class; (2) was qualified for the position; (3) was dismissed despite being qualified; and (4) ultimately was replaced by a person sufficiently younger or of a different national origin to permit an inference of age discrimination." *Id.* Where the plaintiff's position is eliminated and no replacement worker is hired, the plaintiff's prima facie case can be established by a showing "that he is within the protected class, and was qualified for the job from which he was laid off while other workers not in the protected class were retained." *Id.* at 816 n. 3.[9]

**9.** The Supreme Court as well as the Court of Appeals for the Third Circuit recently have noted that there is no talismanic formula to be followed in determining whether a prima facie case of age discrimination has been established. Instead, "the nature of the required showing to establish a prima facie case of disparate treatment by indirect evidence depends on the circumstances of the case." *Waldron,* 56 F.3d at 494 n. 3 (*quoting Torre v. Casio. Inc.,* 42 F.3d 825, 830–

31 (3d Cir.1994); *O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)) (prima facie case of age discrimination is dependent upon circumstances surrounding adverse employment action; it is irrelevant that replacement worker also was in protected class as long as circumstances permit an inference that age was a factor in the decision-making process).

By establishing a prima facie case the plaintiff creates a rebuttable presumption of unlawful discrimination. *Billet*, 940 F.2d at 816. The burden then shifts to the defendant to dispel this inference by furnishing a legitimate nondiscriminatory reason for the adverse employment decision. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. If the employer meets this burden of production, the presumption of discriminatory intent created by the employee's prima facie case is rebutted. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407, 418 (1993); *Waldron v. SL Industries, Inc.*, 56 F.3d 491, 494 (3d Cir.1995).

If the defendant successfully rebuts the presumption of discriminatory intent, the plaintiff must then prove by a preponderance of the evidence that the reasons put forth by the defendant are a pretext for unlawful discrimination. *Billet*, 940 F.2d at 816. The plaintiff can prove pretext either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* Where the claim is based upon indirect evidence, the "evidence must be enough to support a *reasonable* inference that the explanation(s) given for the employment decision are pretextual. Merely reciting that age or national origin was the reason for the decision does not make it so." *Id.* (emphasis in original; citation omitted). In other words, the employer's proffered reason cannot be proved to be a pretext for discrimination unless the plaintiff establishes a basis from which the trier could conclude "both that the reason was false, and that discrimination was the real reason." *Hicks*, 509 U.S. at 515, 113 S.Ct. at 2752, 125 L.Ed.2d at 422; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994) ("the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer").

In carrying his/her ultimate burden of persuasion in a pretext case, the employee must establish a basis from which the trier of fact can conclude by a preponderance of the evidence "that there is a 'but-for' causal connection between the plaintiff's age and/or national origin and the employer's adverse [employment decision]—i.e., that age and/or national origin actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome of that process." *Miller v. CIGNA Corp.*, 47 F.3d 586, 595–96 (3d Cir.1995) (*en banc*) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). Establishing "but-for" causation does not require the employee to prove that age was the "sole cause" of the adverse employment decision. Instead, the employee's burden is met where the evidence of record will permit the trier of fact rationally to conclude "that age and/or national origin played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process." *Id.* at 598.

While rejection or disbelief of the employer's proffered explanation for the adverse employment action is insufficient in itself to support a verdict for the employee, *Seman v. Coplay Cement Co.*, 26 F.3d 428, 433 n. 9 (3d Cir.1994), the facts and circumstances giving rise to the prima facie case are to be considered in determining whether there is a sufficient basis from which a finding of intentional discrimination can be made. As the Court of Appeals for the Third Circuit recently opined:

> Hicks teaches, though, that rejection of the employer's proffered nondiscriminatory reason *will* permit the trier of fact to infer the ultimate fact of intentional discrimination, so long as there is a finding of discrimination. In other words, "[t]he factfinder's disbelief of the reasons put forward by the [employer] ... may, together with the elements of the [employee's] prima facie case, suffice to show intentional discrimination."

*Seman*, 26 F.3d at 433 (*quoting Hicks*, 509 U.S. at 502, 113 S.Ct. at 2749, 125 L.Ed.2d at 418). The inferences arising from the prima facie case are to be considered in conjunction with the remaining evidence of record in determining whether plaintiff has set forth sufficient evidence from which the trier of fact could find that the defendant's proffered

explanation is a mere pretext for unlawful discrimination.

The Third Circuit recently has emphasized that proffering sufficient evidence from which to discredit the employer's articulated legitimate explanation for the adverse employment decision generally is sufficient to survive a motion for summary judgment. The *Fuentes* court opined:

> [B]ecause the factfinder may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's proffered non-discriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons, . . ., a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Thus, if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case.

*Fuentes*, 32 F.3d at 764 (emphasis in original; citations omitted); *Waldron*, 56 F.3d at 494–5 (same). The assessment of whether a plaintiff has cast sufficient doubt on the defendant's proffered reason is not to be made in a vacuum and the plaintiff need not cast doubt on each and every advanced explanation where more than one is advanced. Instead, the plaintiff must cast "substantial doubt on a fair number" of the defendant's proffered explanations and demonstrate that the record contains an adequate basis upon which the finder of fact can conclude that the employer's proffered legitimate reasons are unworthy of credence and Infer "that the

employer did not act for [the asserted] non-discriminatory reasons." *Id.* at 764–5 n. 7. Meeting this standard precludes the entry of summary judgment in favor of the employer. *Id.* at 764–5; *Waldron*, 56 F.3d at 494–95.

*Plaintiff's Prima Facie Case and Analysis*

The plaintiff contends that circumstantial evidence establishes that the defendants are not entitled to summary judgement. Plaintiff's prima facie case is as follows. Under the ADEA, the class of individuals who are protected are those over 40 years of age. 29 U.S.C. § 631. Similarly, under Title VII, national origin is a protected class. Plaintiff, an American, was over 49 years old when he was laid-off and thus was a member of the protected classes.

With respect to the second element, there is no dispute concerning plaintiff's qualifications to "perform his job at a level that met his employer's legitimate expectations." *See Obitko v. Ohio Barge Line*, 628 F.Supp. 62, 62 (W.D.Pa.1986). In fact, plaintiff points out that when he questioned Montgomery about the rumors that Meco–Owens was for sale, Montgomery told plaintiff that he had nothing to worry about because without ". . . salespeople who know our products best, we don't have market penetration." (Rocco Deposition p. 68). Plaintiff indicates that he was complimented on his job performance, and defendants do not present contrary evidence. Accordingly, plaintiff has satisfied the second element of the prima facie case.

To meet the third element, plaintiff presents evidence that younger and/or British persons were retained while he was not. Specifically, plaintiff contends that nineteen people from the feeder-breaker division were laid off and three persons from feeder-breaker division were transferred to Meco International.[10] The three persons from this division who were transferred to Meco are all younger than plaintiff.[11] There also were employees of Meco–Owens not in the feeder-

---

**10.** Plaintiff argues that Meco–Owens had a total of between 80 to 100 employees plus an undisclosed number of temporary employees who were hired for short-term projects.

**11.** The three persons who plaintiff claims were transferred and their respective age differences are as follows. Gregory Isenberg is 21 years younger than plaintiff; C. Wagner Lister is 8 years younger than plaintiff; and Tracy Poston is 23 years younger.

breaker division who were either transferred to Meco International or were transferred to a Meco-related company overseas. Plaintiff claims he should have received the opportunity to sell equipment for other divisions or to transfer to another division like younger and/or British employees.

In rebuttal, the defendants argue that there were no similarly situated Meco–Owens district sales managers who were retained. Defendants aver that all other Meco–Owens employees directly involved in the feeder-breaker business, 21 people ranging in age from 57 to 32, were laid off.[12] The threshold question is whether those younger and/or British employees who were retained were similarly situated.

■ In order to determine whether persons retained by defendants were similarly situated, it is necessary to first define the appropriate work unit. *See, e.g., Marzano v. Computer Science Corp., Inc.,* 91 F.3d 497, 503 (3d Cir.1996). The parties strenuously disagree as to what is the appropriate work unit. Defendants argue that the Meco–Owens feeder breaker division is the appropriate work unit. Plaintiff contends that because the company barriers between Meco–Owens and Meco International were porous and the personnel consistently interacted with each other, the appropriate work unit includes the entire Meco sales unit.

■ A review of the record indicates that there remain issues of fact whether employees at the various locations sold the same product as the plaintiff and whether these persons were outside the protected class. Nevertheless, this court cannot say as a matter of law that the other locations are not part of the same work unit in which plaintiff was employed. What *is* clear from the record is that younger and/or British employees from Meco–Owens worked in the Warrendale and Bristol facilities after the layoff. To meet the fourth prong of his prima facie case it is sufficient for plaintiff to show only that he was discharged while someone outside the protected class was retained. *Marzano,* 91 F.3d at 503. Accordingly, plaintiff has established a prima facie case.

■ Once plaintiff establishes a prima facie case, the burden shifts to the defendant to present a legitimate business reason for the adverse employment decision. To rebut plaintiff's prima facie case, defendants articulate that poor economic conditions and the fact that the Meco–Owens product line was not primarily related to the Meco International primary longwall line, led to the decision to sell the Meco–Owens feeder-breaker division. As a direct result of the sale, all Meco–Owens employees were laid off including plaintiff and no discriminatory intent was involved.

Defendants need only to produce a legitimate, nondiscriminatory business reason for the adverse employment decision. Having done this, the burden shifts back to the plaintiff to establish that this reason is a mere pretext for the discrimination.

■ The record contains the following evidence which affirmatively supports plaintiff's contention that there is a genuine issue for trial. First, plaintiff asserts that until only a few months prior to the sale of the Meco–Owens feeder-breaker division, he was selling the same product as other younger and/or British Meco International employees who were retained. For example, plaintiff claims that Gordon Hughes and Spedding sold Meco–Owens equipment, including feeder-breakers and handled complaints concerning Meco–Owens equipment. Both salesmen, who were younger than plaintiff and British, were retained and continue to sell equipment which plaintiff had sold prior to his lay-off. Similarly, John Taylor, a British employee who is eleven years younger than plaintiff was retained.

Second, plaintiff indicates that Meco International favored younger and/or British employees regardless of their performance. For example, Kaczmarek, who was 31 years old at the time plaintiff was laid off, had only two years sales experience, had limited industry contacts and was incapable of selling complex equipment. Plaintiff stated that he assisted Kaczmarek with his selling skills and sales contacts on a continual basis.

---

12. Of the 21 people laid off, it is undisputed that all were American.

Third, plaintiff again emphasizes that shortly before his discharge he was praised for his abilities and expansive business connections and was reassured that his job was secure despite the sale of Meco–Owens division.

Fourth, plaintiff alleges that the defendants went to great lengths to accommodate British employees. In this regard, plaintiff highlights that British employees and British high school students were provided with the opportunity to enter an apprenticeship program with Meco International which was not available to Americans.

Similarly, because of immigration problems, plaintiff claims that if Meco International brought British employees to the United States, Meco would strive to keep them employed because it was more costly to lay-off British employees and send them back to the United Kingdom than to lay off Americans. In support, plaintiff also proffers statistical evidence which indicates that a disproportionate number of Americans were laid off as compared to British employees.

Reviewing the totality of the issues raised in a light most favorable to the plaintiff, the arguments presented by plaintiff are sufficient to permit an inference by the factfinder that defendants' reliance on the sale of the feeder-breaker division as justification for the lay-off is pretext. It would not be unreasonable for a jury to conclude that defendants used the sale of the feeder-breaker division as a vehicle to shed unwanted older and/or American employees. On the other hand, a reasonable jury could conclude that because of the sale and poor economic conditions, the defendants properly laid-off the employees for whom Meco International no longer had jobs. In any event, there exist genuine issues of fact which preclude the entry of summary judgment for either party.