John SHERBACK, Plaintiff,

v.

**WRIGHT AUTOMOTIVE GROUP, Defendant.**

No. Civ.A. 96–1673.

United States District Court, W.D. Pennsylvania.

Dec. 12, 1997.

Andrew G. Sykes, Samuel J. Cordes, Ogg, Jones, Cordes & Ignelzi, Pittsburgh, PA, for Plaintiff.

Shelly R. Pagac, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION

LEE, District Judge.

After due consideration of defendant Wright Automotive Group's Motion for Summary Judgment with brief in support, plaintiff John Sherback's response and brief in opposition, and the affidavits, documents and other materials submitted in support of and in opposition to summary judgment, this Court will deny defendant's motion for summary judgment because there exist genuine issues of material fact as to whether plaintiff is disabled as a result of post-traumatic stress disorder ("PTSD") within the meaning of the Americans with Disabilities Act, 42 United States Code §§ 12101–12117 ("ADA"), and as to whether defendant terminated plaintiff from employment for which he was qualified because of said disability.

### Summary—Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language ... mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must view the facts in a light most favorable to the non-moving party and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Id.,* 477 U.S. at 242, 106 S.Ct. at 2505. The "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.' " *Ely v. Hall's Motor Transit Co.,* 590 F.2d 62, 66 (3d Cir.1978), quoting *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. Hollingsworth Corp.,* 996 F.2d 632 (3d Cir.1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224 (3d Cir.1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Petruzzi's IGA Supermarkets,* 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the Court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

"One of the most common forms of evidence used on a summary judgment motion is affidavits ... in support of or opposition to a Rule 56 motion...." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure, § 2722 at 54. Hearsay evidence contained in affidavits and deposition testimony may be sufficient to survive summary judgment motion unless such evidence clearly would not be admissible at trial. *Clark v. Commonwealth of Pennsylvania,* 885 F.Supp. 694, 709 n. 3 (E.D.Pa.1995), *citing Petruzzi's IGA Supermarkets,* 998 F.2d at 1234 n. 9.

*Americans with Disabilities Act*

"No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." ADA, 42 U.S.C. § 12112(a). A plaintiff asserting an ADA claim bears the initial burden of establishing a prima facie case of unlawful discrimination, which, in an in direct/circumstantial evidence case, he meets by demonstrating: (1) he is a member of a protected class in that he has a "disability"; (2) he is qualified for the position in that he can perform the work with reasonable accommodations; (3) he has suffered an adverse employment decision as a result of discrimination; and (4) he was replaced by a person not belonging to the protected class. *Olson v. General Elec. Astrospace,* 101 F.3d

947, 951 (3d Cir.1996) [1]; *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate legitimate non-discriminatory reasons for the employment decision. *Olson*, 101 F.3d at 951. Once the employer has met this burden of production, it is incumbent upon the plaintiff to show that the asserted reason is a pretext for discrimination. *Olson*, 101 F.3d at 952. The plaintiff can defeat a summary judgment motion by casting doubt on the credibility of the employer's articulated reasons or by raising a genuine issue as to whether the adverse employment decision was motivated by a discriminatory intent. *Olson*, 101 F.3d at 951.

■ Defendant concedes at this point that plaintiff has an impairment diagnosed as PTSD, and moves for summary judgment *only* "upon Plaintiff's failure to meet the definition of being disabled under the ADA." Defendant's Reply Brief (Document No. 30). In *Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir.1996), the Court of Appeals for the Third Circuit explained the meaning of "disability," as follows:

A plaintiff has a *"disability"* for the purposes of the ADA if he *(1)* has *"a physical or mental impairment that substantially limits one or more of the major life activities of such individual"*; (2) has *"a record of such an impairment"*; *or (3) is "regarded as having such an· impairment."* 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g) . . . . .

The ADA does not define "major life activities." *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994), *cert. denied* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). The EEOC regulations, however, provide, that an individual is substantially limited in a major life activity if he is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C .F.R. § 1630.2(j). In relevant part, the regulations suggest considering· "[t]he nature and

1. *Olson* set out the *McDonnell Douglas* elements of a prima facie case of ADA discrimination merely by way of providing the framework for its decision which in no way turned upon the "fourth element." In *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311–12, 116 S.Ct. 1307, 1308–09, 134 L.Ed.2d 433 (1996), the Supreme Court of the United States appears to have "modified" the traditional formulation of a plaintiff's prima facie case in employment discrimination cases as first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *O'Connor* stated "the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case." *Id.* at 311, 116 S.Ct. at 1310. The Court reasoned "that the prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion. . . .' *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977) (emphasis added). in the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger. Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger ... is a far more reliable indicator of age discrimination than is the fact that

the plaintiff was replaced by someone outside the protected class." *Id.* (parallel citations omitted).

Post *O'Connor* decisions reflect a degree of uncertainty as to the extent to which that unanimous decision altered the traditional burdens of proof in ADEA and other employment discrimination cases, if at all. *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887 (7th Cir.1997); *compare Rocco v. American Longwall Corp.*, 965 F.Supp. 709, 711 n. 9 (W.D.Pa.1997) ("The Supreme Court [in *O'Connor*] as well as the Court of Appeals for the Third Circuit recently have noted that there is no talismanic formula to be followed in determining whether a prima facie case of age discrimination has been established. Instead, 'the nature of the required showing to establish a prima facie case of disparate treatment by indirect evidence depends on the circumstances of the case,'" *quoting Waldron v. SL Indus. Inc.*, 56 F.3d 491, 494 n. 3 (3d Cir.1995)), *with Gutknecht v. SmithKline Beecham Clinical Lab., Inc.*, 950 F.Supp. 667, 672 (E.D.Pa.1996) (holding that *O'Connor* has not altered the "sufficiently younger" element of the prima facie case of age discrimination) This Court has no occasion to resolve the uncertain application of *O'Connor* to the "fourth element," however, because defendant challenges only the first element, i.e., whether plaintiff has a cognizable disability.

severity of the impairment." [note 4] 29 C.F. R. § 1630.2(j)(2)(i).

[note 4]. The regulations also provide that the decision maker should consider "[t]he duration or expected duration of the impairment" and "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j) . . .

*Id.* at 105 (emphasis added).

In *Olson,* the Court of Appeals implicitly approved and applied the EEOC regulations (as it had in *Kelly* ) regarding "major life activities," as including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Olson,* 101 F.3d at 952; 29 C.F.R. § 1630.2(i).

*Discussion*

■ Plaintiff alleges, and defendant does not dispute, that he has been diagnosed by his treating physician as suffering from PTSD as a result of trauma associated with his having worked search, rescue and cleanup duty for five days at the crash site of USAir's Flight 427 as a volunteer fire fighter for the Hopewell, Pennsylvania Volunteer Fire Department in September, 1994. There is no doubt PTSD is a psychiatric impairment which may qualify for disability status under the ADA if the impairment substantially limits a person's major life activities or is regarded by the employer as doing so. *See e.g., Hatfield v. Quantum Chemical Corp.,* 920 F.Supp. 108 (S.D.Tex.1996); *Coaker v. Home Nursing Services, Inc.,* 1996 WL 316739 (S.D.Ala.1996). Plaintiff has been diagnosed with a moderate to severe, chronic case of PTSD, and claims he is disabled as a result under the first ("a physical or mental impairment that substantially limits one or more of the major life activities of such individual") and third ("regarded as having such an impairment") statutory categories of disability.

As to the first category, the crux of defendant's motion for summary judgment is that plaintiff admitted in deposition testimony that as of September, 1995, when he was terminated, he was able to care for himself, feed himself, walk, breath, see, hear, learn, work, think, concentrate, lift, reach, etc., and

so cannot be considered to have any physical or mental impairment "that substantially limits one or more of the major life activities." Also, defendant points to plaintiff's current employment as a full time emergency medical technician as inconsistent with his· allegation he is disabled from work and other major life activities. Plaintiff does not now deny the deposition testimony or the admissions made therein, and he concedes he is currently a full time emergency medical technician. However, he asserts that he was and is able to perform these activities *only* with the assistance of psychotropic medications and psychiatric counseling, without which his PTSD did prevent and would have prevented him from performing these activities.

The medical evidence offered in opposition to summary judgment adequately supports plaintiff's factual assertions; for example, the medical evidence from his psychiatric treatment shows he suffered "a severe relapse of his PTSD symptoms" when he was unable to afford medication prescribed for his PTSD when he lost his health benefits upon being terminated. Appendix 1, Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Document No. 26). Thus, the question comes down to one of law: is a person's psychiatric impairment, for the purposes of determining whether it constitutes a disability within the meaning of the ADA, to be considered without regard to any mitigating or corrective medical measures. If the answer to that question is "yes," plaintiff has demonstrated sufficient facts of record, for summary judgment purposes, to sustain his claim of an ADA disability under the first category.

The agency charged with enforcing and implementing the ADA in the first instance, the EEOC, 42 U.S.C. § 12117, has issued interpretative guidelines which make clear its view that a person's disability *must be considered without regard for mitigating or corrective medical measures.* 29 C.F.R. § 1630.2(h) and 2(j), Appendix to Part 1630, Interpretive Guidance on Title I of the Americans with Disabilities Act. The EEOC's interpretive guidelines provide, in relevant part:

## Section 1630.2(h) Physical or Mental Impairment

*The existence of an impairment is to be determined without regard to mitigating measures such as medicines, or assisted or prosthetic devices.* See Senate Report at 23, House Labor Report at 52, House Judiciary Report at 28. For example, an individual with epilepsy would be considered to have an impairment *even if the symptoms of the disorder were completely controlled by medicine.* Similarly, an individual with hearing loss would be considered to have an impairment even if the condition were correctable through the use of a hearing aid.

## Section 1630.2(j) Substantially Limits

An impairment that prevents an individual from performing a major life activity substantially limits that major life activity. For example, an individual whose legs are paralyzed is substantially limited in the major life activity of walking because he or she is unable, due to the impairment, to perform that major life activity. Alternatively, an impairment is substantially limiting if it significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity. Thus, for example, an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking. An individual who uses artificial legs would likewise be substantially limited in the major life activity of walking because the individual is unable to walk without the aid of prosthetic devices. *Similarly, a diabetic who without insulin would lapse into a coma would he substantially limited because the individual cannot perform major life activities without the aid of medication.* See Senate Report at 23; House Labor Report at 52. It should be noted that the term "average person" is not intended to imply a precise mathematical "average." . . .

The determination of whether an individual is substantially limited in a major life activity *must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices.* 29 C.F.R. § 1630(2)(h) and (2)(j), Appendix (emphasis added).

The EEOC applies these same guidelines principles in the context of psychiatric disabilities, advising that "the extent to which an impairment limits performance of a major life activity is assessed *without regard to mitigating measures, such as medications. . Thus, an individual who is taking medication for a mental impairment has an ADA disability if there is evidence that the mental impairment, when left untreated, substantially limits a major life activity.*" EEOC Policy Statement, No. 820, *EEOC Psychiatric Disabilities and the ADA,* March 25, 1997, 405 Fair Employment Practice 7461, 7464 (BNA 1997) (emphasis added).

The Court of Appeals for the Third Circuit historically has given the EEOC's guidelines and regulations interpreting the ADA substantial deference. *See e.g., Olson, Kelly.* Similarly, although our Court of Appeals has not addressed the specific regulations at issue herein, this Court gives substantial deference to and will adopt the EEOC guidelines with respect to "mitigating measures such as medicines, assistive or prosthetic devices" and their role in the determination of disability. The federal courts are not unanimous with regard to the proper amount of deference to be given these interpretive guidelines, and a few have declined to follow the EEOC's guidelines with regard to "mitigating measures," 29 C.F.R. § 1630.2(h) and 2(j), Appendix. *See Schluter v. Industrial Coils, Inc.,* 928 F.Supp. 1437, 1445 (W.D.Wis. 1996), and *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808 (N.D.Tex.1994). This Court, however, aligns itself with the more comprehensive and persuasive reasoning and holdings of those circuit and district courts which have embraced and adopted the EEOC's guidelines, finding no counter indicated language in the statute, in its completely consistent legislative history, or any other impediment to giving substantial deference to the

EEOC's reasonable interpretive guidelines at 29 C.F.R. § 1630.2(h) and 2(j), Appendix. *See e.g., Harris v. H & W Contracting Co.,* 102 F.3d 516, 521 (11th Cir.1996) ("the appendix to the applicable federal regulations [regarding 'mitigating measures'] is firmly rooted in the ADA's legislative history.... We cannot disregard the interpretive guidance ... prepared by the federal agency charged with enforcing the ADA, when that guidance is based on a permissible construction of the statute and is supported by the statute's legislative history."), *Holihan v. Lucky Stores, Inc.,* 87 F.3d 362, 366 (9th Cir.1996) ("Under EEOC regulations, we are not to consider mitigating measures in determining whether an individual is disabled. 29 C.F.R. § 1630.2(h)(App.)."); *Roth v. Lutheran General Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995) ("The determination of whether a condition constitutes an impairment, or the extent to which the impairment limits the individual's major life activities must be made without regard to the availability of mitigating measures such as medicines, or assistive or prosthetic devices. See 29 C.F.R. pt. 1630 App. § 1630.2(h), (j). However, the mere use of a mitigating measure does not automatically prove the presence of a disability, some individuals may use medication, prosthetic devices, or auxiliary aids to alleviate impairments that are not substantially limiting. See EEOC Compliance Manual § 902.5 (March 1995). Moreover, not every impairment that affected an individual's major life activities is a substantially limiting impairment."); *Wilson v. Pennsylvania State Police Dep't,* 964 F.Supp. 898 (E.D.Pa.1997) (Rendell, J., holding that a person's disability must be determined, as the EEOC interpretive regulations provide, without regard to mitigating medical measures used to offset the effects of their impairments, such as the plaintiff's use of eyeglasses to correct severely myopic vision; Judge Rendell analyzes and soundly rejects *Schluter and Coghlan,* and performs a thorough analysis of legislative history and judicial precedent regarding proper deference to be given an agency's interpretive guidelines and regulations); *Sicard v. City of Sioux City,* 950 F.Supp. 1420, 1430–39 (N.D.Iowa 1996) (same holding and similar exhaustive analysis as *Wilson* ) (collecting cases).

Without regard to the medications his treating psychiatrist prescribed for plaintiff to offset the effects of his PTSD, including Zoloft and Klonopin, a fact finder could well determine plaintiff's impairment has substantially limited many of his major life activities, including work, interaction with others, marriage, thinking, and concentration, and his claim under the ADA's first category of disability must be permitted to go forward.

 As to the third category, "regarded as having a disability," plaintiff also has carried his burden at this stage of the proceedings. Indeed, defendant itself recognizes there are some pretty damaging statements of key management employees in the record that could be interpreted as supporting plaintiff's claims. Defendant "anticipates that Plaintiff will point to the following alleged statements to suggest that Defendant regarded Plaintiff as being disabled: [supervisor] Pratt testified that [his supervisor] Miller said that John was *dangerous and could no longer do his job* (Pratt Dep. 26); that Miller said that 'Sherback could not do the job *as a result of the stress of the crash.*' (Pratt Dep. 31); and that [owner] Wright said ... 'Sherback's *crazy* ' (Pratt Dep. 36)." Defendant's Brief in Support of Summary Judgment (Document No. 22), 14–15 (emphasis added). Realizing plaintiff would, of course, rely on those particular comments to support his claim that his employer regarded him as disabled because of his PTSD, defendant apparently seeks to "take the sting out" by identifying them first in its brief, accompanied by its own explanations and benign gloss on their meaning. Obviously, those are arguments defendant must address to the jury, not to this Court, for they are arguments as to the credibility of witnesses and the inferences that may or may not be drawn from comments made by supervisory personnel. Coupled with other evidence of record, including that plaintiff's immediate supervisor recognized plaintiff's suffering and encouraged him to seek psychiatric assistance and that Miller was aware plaintiff was receiving psychiatric counseling, there is a genuine issue of material fact as to whether defendant re-

garded plaintiff as having a disability within the meaning of the ADA's third category.

For the foregoing reasons, defendant's motion for summary judgment will be denied, and an appropriate order issued.

## ORDER OF COURT

**AND NOW, this 12th day of December, 1997, IT IS HEREBY ORDERED** that Defendant Wright Automotive Group's Motion for Summary Judgment (Document No. 21) is **DENIED.**